# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

PENNY WHITE,

    Plaintiff,

v.                                        No. 2:19-cv-2122

UNITED STATES OF AMERICA,

    Defendant.

## COMPLAINT

Plaintiff Penny White files this Complaint against the United States of America ("Defendant", "United States" or "government") for the acts of certain employees and/or agents of the Memphis Veterans Affairs Medical Center in Memphis, Tennessee ("VA", "VA Hospital", "VA Medical Center", or "hospital"), and in support would show as follows:

### I. PARTIES

1. Plaintiff Penny White was at all times relevant to this action a resident of Coldwater, Tate County, Mississippi, and a citizen of the United States of America. The actions and inactions complained of herein occurred while Plaintiff was a patient at the Memphis Veterans Affairs Medical Center in Memphis, Shelby County, Tennessee.

2. Defendant United States of America is before this Court to answer for the negligent acts of the doctors, nurses, employees, staff, and/or agents at the Memphis Veterans Affairs Medical Center in Memphis, Tennessee. The VA Hospital/VA Medical Center is operated by the Department of Veterans Affairs, which is a department of Defendant United States. All doctors, nurses, and other healthcare providers that treated Plaintiff in the hospital and during visits to

affiliated clinics and departments of the VA Hospital/VA Medical Center were employees of Defendant United States of America acting in the course and scope of such employment at all relevant times. Alternatively, certain healthcare providers were agents of Defendant United States of America, whether actual and/or apparent, and were acting in the course and scope of such agency at all relevant times. As such, the government is liable for any negligent act of these individuals. The United States may be served by serving the United States Attorney for the Western District of Tennessee and the Attorney General of the United States.

## II.  JURISDICTION AND VENUE

3. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., which removes governmental immunity under the facts and circumstances of this case. This case arises out of the medical care and treatment of Plaintiff by the doctors, nurses, employees, staff, and/or agents at the VA Hospital in Memphis. Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1346, and venue is proper because all or part of this cause of action occurred in this judicial district.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Pursuant to 28 U.S.C. § 2401 and 28 U.S.C. § 2675, a claim was timely filed with the Department of Veterans Affairs, and Plaintiff provided said agency with ample material to evaluate this claim. More than six months have passed since the filing of the administrative claim and the Department of Veterans Affairs has not rejected the claim but has also not made any effort to resolve the claim. Accordingly, the failure of the agency to make a final disposition within six months is deemed a final denial and allows Plaintiff to move forward with her claim in this Court. Plaintiff has thus exhausted administrative remedies, and the filing of this Complaint is timely.

### IV. NOTICE AND CERTIFICATE OF GOOD FAITH REQUIREMENTS

5. Plaintiff provided the government with timely notice of this federal tort claim by timely filing a formal administrative claim under applicable law. While Plaintiff does not believe that any additional notice was necessary, Plaintiff nonetheless complied with the notice requirements outlined in Tenn. Code Ann. § 29-26-121, and as such, this Complaint is timely filed. Moreover, counsel for Plaintiff is filing a Certificate of Good Faith pursuant to Tenn. Code Ann. § 29-26-122 contemporaneously with this Complaint, confirming that the undersigned has consulted with competent experts who believe that there is a good-faith basis to pursue the claims asserted in this Complaint.

### V. FACTS

6. The allegations contained in the previous paragraphs are incorporated herein by reference as if restated verbatim.

7. Plaintiff has Stage IV bladder cancer, which her doctors consider to be a terminal illness.

8. As of the date hereof and when Defendant's agents finally diagnosed Plaintiff with Stage IV cancer, the disease had already spread to other parts of Plaintiff's body including her bones, and Plaintiff's oncologists have determined immunotherapy to be ineffective.

9. Plaintiff is currently undergoing chemotherapy; however, her physicians have told her that her chances of survival are not good and that she will likely die from this cancer in the near future because it had already progressed to Stage IV disease by the time Defendant's agents finally made the correct diagnosis in this case in 2018. However, Plaintiff first presented to the VA hospital in early 2016 and Defendant's agents had numerous opportunities to diagnose her cancer before it progressed from Stage I curable cancer to Stage IV incurable cancer. Defendant's agents

repeatedly failed to timely diagnose Plaintiff's cancer and their failures were inexcusable and clear deviations from the accepted standard of care.

10. Plaintiff's cancer would have been timely diagnosed when it was still a localized cancer before it metastasized to other parts of her body if Defendant's providers had adhered to the applicable standard of care. Had Plaintiff's cancer been timely diagnosed, it would have been a curable cancer and she most likely would have had a normal life expectancy.

11. Plaintiff's cancer was not discovered until after doctors at the VA performed a flexible cystoscopy on February 13, 2018, which revealed tumors in her bladder and led to additional testing that confirmed a cancer diagnosis.

12. The test was only performed after Plaintiff, who is not a medical professional, conducted her own research in or around February of 2018 and specifically requested she be examined for cancer. Up until this time, Plaintiff justifiably relied upon the VA healthcare providers to timely diagnose and treat her in an appropriate manner. She had no reason to know or suspect that she was not being treated appropriately but ultimately became frustrated by February of 2018 after repeatedly presenting to the VA for pain and urology issues without resolution.

13. Starting in May 2016, Plaintiff presented to the VA multiple times over the course of multiple years for pain, hydronephrosis, and urinary tract issues.

14. Plaintiff saw numerous different physicians over the course of these visits and was not given a consistent care plan. Plaintiff asserts all such physicians were employees and/or agents of Defendant and acting as employees and/or agents of same. Plaintiff submits that multiple agents of Defendant provided her with negligent care from May of 2016 through February of 2018 and that Defendant was also negligent for failing to have a system in place at the VA Hospital that provided Plaintiff and other patients with continuity of care. Moreover, Defendant failed to

4

appropriately supervise the younger doctors and nurses that provided Plaintiff with care from May of 2016 through February of 2018. Plaintiff submits that the above negligence constitutes a deviation from the accepted standard of care in this community.

15. On or around May 26, 2016, Plaintiff presented to the VA with left flank pain, which was causing her nausea. She was scheduled for a June 23, 2016 cystoscopy for the purpose of examining the bladder for abnormalities, including tumors. However, the procedure was canceled and the procedure was not rescheduled within a reasonable time by the VA. Nobody ever expressed any sense of urgency to Plaintiff or provided any warning as to the importance of the test in violation of the applicable standard of care.

16. Upon information and belief, the length of delay for this exploratory procedure was in violation of the applicable standard of care.

17. The VA waited almost 8 months to reschedule the cystoscopy that was originally scheduled for June 23, 2016. Upon information and belief, this VA medical center, VA medical centers nationwide and the Defendant United States were on notice of the systemic problem in providing timely care to patients well before VA agents waited nearly 8 months to perform this important test on Plaintiff.

18. On or around January 13, 2017, Plaintiff reported to the VA that her left flank pain continued and had increased in intensity.

19. On or around February 2, 2017, a rigid cystoscopy was performed to diagnose Plaintiff's left flank pain and left hydronephrosis. The ureter appeared tortuous, and the decision was made to place a stent and return for an additional cystoscopy and ureteroscopy at a different date.

20. On or around March 7, 2017, a rigid cystoscopy was repeated. There was a 2 to 3 cm segment of friable tissue present. It was determined that there was no evidence of a stricture or

significant left side hydronephrosis. Even though no cause for Plaintiff's pain had been determined, the VA providers did not perform a biopsy or any other diagnostic procedures, despite previously expressing a concern that Plaintiff's symptoms could be a sign of cancer.

21. Upon information and belief, the applicable standard of care absolutely required agents of the VA to perform a biopsy in March of 2017.

22. Had a biopsy been performed at this time, Plaintiff's cancer would have been discovered and treated before it progressed to incurable Stage IV disease.

23. Defendant's agents failed to comply with the applicable standard of care and Defendant is liable for their negligence.

24. From March 2017 onward, agents had additional opportunities to diagnose Plaintiff's cancer but failed to do so for almost a year, during which time the cancer metastasized and became untreatable.

25. It was an inexcusable and unacceptable violation of the applicable standard of care for the physicians of the VA (who were all agents or apparent agents of Defendant at all times relevant to this claim) to fail to order a biopsy in early March of 2017 after the cystoscopy showed an inflammatory process and other abnormalities that the VA physicians knew or should have known were suspicious for cancer. Cancer was included on Plaintiff's differential diagnosis before the VA providers performed the cystoscopy but they then failed to order the appropriate tests and consults to determine whether the clear abnormalities on that test were signs of cancer.

26. On or around May 2, 2017, a CT scan was performed that showed continued inflammation, and the results of this test were discussed with Plaintiff on or around May 4, 2017.

27. In June of 2017, a flexible cystoscopy was performed for purposes of removing her stent, but no biopsy or other procedure was performed. Agents of the VA advised Plaintiff to come back in the fall of 2017. Nothing was done in the interim time period to determine whether she

6

had cancer or some other life threatening condition, even though the symptoms were there and there were other indicia of cancer that Defendant's healthcare providers failed to timely act on.

28. During this entire time, Plaintiff was relying upon the VA healthcare providers to timely diagnose and treat her in an appropriate manner, and such reliance was reasonable and foreseeable. Plaintiff had no reason to know or suspect that she was not being treated appropriately.

29. Plaintiff's cancer had not yet metastasized at this time and instead metastasized between May of 2017 and February of 2018. This fact is known because the May 2, 2017 CT scan did not show any metastatic disease in her lymph nodes or liver, while a subsequent CT scan done in February of 2018 shows that the disease had progressed as of that time period to incurable Stage IV metastatic disease.

30. On October 17, 2017, the results of a renal scan showed essentially no function of the Plaintiff's left kidney, which was determined to be not salvageable. No biopsy was performed and again, nothing was done to determine whether Plaintiff had cancer or another life threatening condition.

31. On November 13, 2017, Plaintiff was prescribed antibiotics for a supposed urinary tract infection (UTI). The antibiotics were ineffective, and Plaintiff continued to experience urinary tract pain and related symptoms.

32. From approximately December 2017 through January 2018, Plaintiff continued to experience urinary tract symptoms, including burning during urination, blood in urine, and frequent urges to void without being able to void or fully void, along with continued flank, back and pubic pain. During this period, three additional urine cultures were analyzed but did not show an infection. Nevertheless, no additional diagnostic testing was done to determine the cause of Plaintiff's severe symptoms. Via electronic consult on December 15, 2017, the possibility of

tumors was brought up by the attending urologist (an agent of Defendant) upon review of these issues, but no biopsy or any further testing to detect tumors was done during this period in further violation of the applicable standard of care.

33. Defendant's agent healthcare providers continued to delay timely diagnosing and treating Plaintiff, even though by this time Plaintiff had been experiencing pain and concerning symptoms and had a differential diagnosis for cancer for at least a year.

34. Defendant's agent healthcare providers altogether failed to properly diagnose and treat Plaintiff in violation of the applicable standard of care.

35. On or around February 13, 2018, a flexible cystoscopy was finally performed that revealed two erythematous patches and a large papillary mass on the left bladder floor/wall.

36. On or around February 26, 2018, a CT scan was finally performed with findings highly consistent with left-side multicentric uroepithelial malignancy with liver metastasis and diffuse retroperitoneal adenopathy.  Recognizing the urgency of this situation, the lab radiologist notified the requesting physician within 30 minutes of review of these results.

37. On or around March 2, 2018, Plaintiff was informed that the Defendant agent healthcare providers finally were requesting a liver biopsy.  She was diagnosed with Stage IV incurable cancer shortly thereafter.

38. Agents of the VA failed to recognize the cause of Plaintiff's painful symptoms in a timely manner and as such failed to timely diagnose her cancer, even as her symptoms worsened.

39. At no point until February 2018, did anyone at the VA order the appropriate tests or appropriate consults to determine whether Plaintiff had a potentially life threatening disease such as cancer despite including cancer on their differential diagnosis for her as early as January of 2017 and this constitutes a violation of the applicable standard of care.

40. Medical personnel at the VA had multiple opportunities to discover this patient's cancer in time to successfully treat this condition but repeatedly failed to diagnose the cancer or order the appropriate and necessary testing in deviation of the applicable standard of care.

41. As a result of the negligence of her healthcare providers at the VA, Plaintiff has unnecessarily experienced excruciating pain and suffering, loss of earnings, loss of earning capacity, loss of enjoyment of life, mental anguish, and she is likely to ultimately die from her disease.

42. The standard of care required the VA doctors and staff to monitor Plaintiff throughout her treatment and to specifically look for signs of cancer. Had the staff at the VA Medical Center at Memphis complied with the applicable standard of care, they would have more likely than not, discovered Plaintiff's bladder cancer before it progressed to a terminal condition. All such staff were agents of Defendant at all times relevant to this action.

43. Plaintiff asserts that she suffered and continues to suffer from painful and severe physical injuries and emotional distress because of the negligence of the doctors and nurses at the VA Medical Center acting in the course and scope of their employment at the hospital and that she would not have suffered said injuries but for their negligence.

44. The negligence asserted herein caused Plaintiff extreme physical pain and suffering and extreme emotional distress, and such negligence is likely ultimately to cause her untimely death.

45. The deviations of Defendant's agent healthcare providers were the proximate cause of Plaintiff's injuries and damages.

46. It was foreseeable that Plaintiff would sustain and continue to incur such serious and permanent injuries as a result of Defendant's agents' and employees' negligence.

## VI. <u>NEGLIGENCE AND MEDICAL MALPRACTICE/HEALTHCARE LIABILITY ACTION</u>

47. The allegations contained in the previous paragraphs are incorporated herein by reference as if restated verbatim.

48. At all times relevant to this action, Defendant's nurses, doctors, healthcare providers, employees, staff, and/or agents were acting within the course and scope of their employment with the government.

49. The staff at the VA Medical Center owed a duty to comply with the applicable standard of professional practice in Memphis, Shelby County, Tennessee in August 2016 through Plaintiff's ultimate untimely cancer diagnosis in March 2018.  As such, the VA Medical Center and its staff owed Plaintiff a duty to provide timely and appropriate medical care and treatment and Defendant, through its agents, breached that duty.

50. The VA Medical Center failed to implement a system to ensure proper monitoring of patients like Plaintiff and failed to implement a system to provide for proper and timely intervention in the event of symptoms and medical conditions such as those experienced by Plaintiff.

51. The VA Medical Center failed to properly train and supervise its staff and these failures resulted in the injuries suffered by Plaintiff.

52. The nursing staff and doctors at the VA Medical Center had a duty to appropriately examine and monitor Plaintiff regularly and to understand that her symptoms as described herein can be indicators of bladder cancer.  As such, the standard of care required the VA Medical Center doctors and nursing staff to continuously monitor Plaintiff and order the appropriate tests, such as but not limited to a biopsy, and to intervene with appropriate treatment to protect her from harm, and Plaintiff was entitled to trust and rely upon these providers to do so.

53. Moreover, these agents of the government had a duty to investigate why Plaintiff continually experienced flank, back, and pubic pain and urinary tract symptoms, including dysuria, incontinence, frequency, an inability to fully void, rubbing, blood in urine and burning.

54. The VA Medical Center, through its employees and agents had a duty to exercise reasonable care in the treatment of Plaintiff. Such duty was violated, which was the proximate cause and cause in fact of Plaintiff's terminal injuries.

55. Defendant's failure, through its agents and employees, to comply with the recognized standard of acceptable professional practice proximately caused Plaintiff's injuries.

56. Plaintiff would show that Defendant, through its employees and agents, failed to adhere to the applicable standard of care in Memphis, Shelby County, Tennessee and was guilty of negligent acts, including, but not limited to:

   a. Failing to regularly and fully examine and treat Plaintiff;

   b. Failing to provide consistent care to Plaintiff by providers familiar with her situation;

   c. Failing to investigate and treat the underlying cause of Plaintiff's flank, back, and pubic pain and urinary tract symptoms, including dysuria, incontinence, frequency, an inability to fully void, rubbing, blood in urine, and burning;

   d. Failing to timely diagnose and treat Plaintiff's bladder cancer before it metastasized to other parts of her body;

   e. Failing to reschedule Plaintiff's cystoscopy originally scheduled for June 23, 2016, within a reasonable time, and failing to warn Plaintiff of the urgency and necessity of this procedure;

   f. Failing to act with ordinary and reasonable care in accordance with the recognized standard of professional practice;

    g. Failing to perform a biopsy in March of 2017 when there were signs and symptoms to indicate such a procedure was medically necessary;

    h. Failing to timely investigate for cancer in any way for over a year even though cancer was documented as a possibility as early as January of 2017;

    i. Failing to perform a biopsy at the time of Plaintiff's flexible cystoscopy performed in June of 2017;

    j. Failing to order proper and timely consults, imaging studies and other tests for this patient;

    k. Failing to adhere to standing orders, policies, and/or procedures; and

    l. Otherwise failing to provide timely and appropriate care to this patient.

57. Plaintiff alleges that the foregoing acts of negligence were the direct and proximate cause of her metastatic cancer and the injuries complained of herein, and Plaintiff would not have suffered nor continue to suffer such injuries had the VA Medical Center through its employees and/or agents not deviated from the acceptable standard of care that existed in Memphis, Shelby County, Tennessee or a similar community in August 2016 through March 2018.

58. Plaintiff alleges that her injuries were the foreseeable consequence of the negligence of the VA Medical Center and its employees and agents, including, but not limited to, the specific acts of negligence alleged herein.

59. As a direct and proximate result of the government's negligence, Plaintiff suffered harm she would not otherwise have suffered including, but not limited to, past and future pain and suffering, lost wages, loss of past and future earning capacity, emotional distress, permanent disability, past and future medical and health care expenses, other out of pocket expenses and loss of enjoyment of life.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

a. That proper process be issued and served upon Defendant United States of America, and that it be required to appear and answer this Complaint within the time required by law;

b. That Plaintiff be awarded a judgment in the amount of Three Million Dollars ($3,000,000.00) for compensatory damages for all personal injuries incurred, to include but not be limited to medical expenses, lost wages, loss of past and future earning capacity, other out of pocket expenses, pain, suffering and mental anguish of Plaintiff, as a direct and proximate result of Defendant's negligence;

c. That Plaintiff be awarded all available damages under applicable law; and,

d. That Plaintiff be awarded such other and further relief to which she is entitled.

Respectfully submitted,

/s/ Jeffrey S. Rosenblum
Jeffrey S. Rosenblum #13626
Matthew T. May #25547
Adam Lazarov #34761
Rosenblum & Reisman, P.C.
6070 Poplar Avenue, Suite 550
Memphis, TN 38119
(901) 527-9600
jeffr@randrfirm.com
matt@randrfirm.com
adam@randrfirm.com